FILED
 2013 Dec-04  PM 02:09
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| KEITH A. JONES, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No.  5:12-cv-03517-HGD |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant ) | |

## **MEMORANDUM OPINION**

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (hereinafter DIB) and Supplemental Security Income (hereinafter SSI). (Doc.1). The parties have consented to the jurisdiction of the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (*See* Doc. 12). Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be AFFIRMED and this action DISMISSED.

**I.     Proceedings Below**

Plaintiff filed an application for a period of disability and disability insurance benefits on October 23, 2008, in which he alleged that he became unable to work on December 20, 2007. (Tr. 112-18). On March 20, 2009, these claims were initially denied by the agency. (Tr. 73, 82). On May 12, 2009, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which took place on September 7, 2010. On November 10, 2010, the ALJ issued a decision denying plaintiff's application. (Tr. 24-37). The Appeals Council denied plaintiff's request for review. (Tr. 1-6). After the Appeals Council denied plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. 42 U.S.C. §§ 405(g), 1383(c)(3).

**II.    ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that

significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove

the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

The ALJ strictly adhered to this decision-making protocol.  At the time of the ALJ's decision, plaintiff was 49 years old with a high school education and past work experience as an assembler working building ambulances.  (Tr. 148-49, 153).  Plaintiff also has past work experience as a door assembler, cable assembler, truck loader and painter's helper.  (Tr. 36, 68-69).  He alleges that his disability is due to back and neck problems from a 2004 injury and anxiety and depression.  (Tr. 147).  The ALJ found that plaintiff had not engaged in substantial gainful activity since December 20, 2007.  (Tr. 26, Finding No. 2).

At the hearing, the ALJ found that plaintiff had severe impairments including asthma, lumbar and cervical degenerative disease, and depression.  (Tr. 26, Finding No. 3).  However, the ALJ further found that, despite these conditions, plaintiff did not have an impairment or combination of impairments that met or equaled any listing.  (Tr. 26-28, Finding No. 4).  When making this determination, the ALJ specifically cited and considered each of plaintiff's conditions with respect to the listings for these conditions under sections 1.04, for disorders of the spine, 3.02 and 3.03, for pulmonary impairments, and 12.04, for affective disorders.  (Tr. 26-28).

After a detailed review of the medical evidence and plaintiff's hearing testimony, the ALJ next found that plaintiff had the residual functional capacity ("RFC") to perform a range of light work, except that he was limited to occasional overhead reaching, but he could frequently stoop, kneel, crouch and crawl. (Tr. 28, Finding No. 5). He also was to avoid concentrated exposure to fumes. In a finding plaintiff asserts is most important (Pl. Br. at 7), the ALJ held that the plaintiff could perform simple one- and two-step tasks that would require a low-stress work environment and that required only occasional contact with the public. (Tr. 28, Finding No. 5; Tr. 69-70). The ALJ reached this conclusion after careful and detailed review of the medical/psychological evidence. (Tr. 28-36).

In determining whether plaintiff could perform past relevant work, the ALJ asked a hypothetical question to the Vocational Expert ("VE") and was advised that he could not. That exchange is as follows:

> ALJ: Please assume you're dealing with a hypothetical individual the same age as the Claimant, with the same educational background and past work experience. Further assume that this hypothetical individual retains the capab[ility] of lifting 20 pounds occasionally, 10 pounds frequently, can stand six of eight hours, walk six of eight hours, and sit six of eight hours. Overhead reaching would be occasional. Stooping, kneeling, crouching, and crawling would be frequent. Fumes, avoid concentrated exposure. This individual could do simple one, two-step tasks, and would require low-stress work environment. While low-stress is not defined with – not a functional limitation, a functional limitation to resolve the stress would be only occasional contact with the public.

> Could such an individual perform any of the Claimant's past relevant work as actually performed or as generally performed in the national economy?
>
> VE: No, sir, the most immediate reason being that all the past relevant, relevant work was above that of sedentary.
>
> ALJ: Could such an individual perform any other work which exists in the national economy? And if so, please identify the jobs, the DOT number if available, and the incidents of the jobs in the regional or national economy.
>
> VE: Yes, sir, there are jobs that would fall within those parameters. Such jobs as a weaver defect clerk.

(Tr. 69-70).

The VE then named other types of jobs plaintiff could perform for which jobs were available in the local and national economy, including garment sorter and box sealer inspector. (Tr. 70-71).

The ALJ then provided a variation on this hypothetical question, stating as follows:

> ALJ: Hypothetical number two is the same as hypothetical number one. The only modification is this individual would miss various time from work. The frequency of these have to be in the sole discretion of this individual. By way of illustration, this individual may have pain or may have psychological related events that would interfere with attending at the work station. It could be 15 minutes one day, it could be multiple hours another day. It would occur on a frequent basis. Would that affect your answer?

> VE: It would, Your Honor, in that it would be considered excessive absenteeism or excessive breaks, and really preclude jobs I've mentioned or any other work in the national economy.

(Tr. 71).

The ALJ, using the VE testimony and looking to the Medical-Vocational Guidelines as a framework for decision making, ultimately concluded that significant numbers of jobs existed in the national economy that plaintiff could perform despite his RFC. (Tr. 36-37, Finding No. 10). Therefore, the ALJ found that plaintiff was not disabled. (Tr. 37, Finding No. 11).

### III.   Plaintiff's Argument for Reversal

Plaintiff seeks to have the Commissioner's decision reversed. He argues that the hypothetical question posed to the VE did not incorporate all of the plaintiff's established limitations and capabilities. (Pl. Br. at 8-9). According to plaintiff, in addition to the non-exertional limitations listed in the hypothetical question to the VE, the ALJ should have included limitations noted in the functional capacity assessment of Dr. Frank Nuckols wherein he states:

> Claimant would likely have trouble carrying out more detailed tasks and instructions. Claimant would be expected to maintain attention and concentration for 2 hours without customary rest breaks. A well-spaced work environment would be best for maximum concentration. Claimant would likely miss 1-2 days/month due to psych symptoms.

(Tr. 334).

> Contact with the public should be infrequent and non-intensive. Supervision should be tactful, constructive and non-threatening.

(*Id.*).

Because the hypothetical question failed to include these limitations, plaintiff asserts that the ALJ failed to pose a hypothetical question which comprised all of the claimant's impairments (limitations), contrary to *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Therefore, plaintiff asserts that VE's testimony did not constitute "substantial evidence" sufficient to sustain the Commissioner's factual findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.   Discussion**

When, as in the present case, a claimant is unable to do past relevant work, the examiner must determine whether in light of the RFC, age, education and work experience, the claimant can perform other work. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also Crayton v. Sullivan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by applying the Medical Vocational Guidelines (the

grids), 20 C.F.R. § 404, Subpart P, Appendix 2, or by the use of a vocational expert, *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

With regard to the limitations which plaintiff alleges the ALJ improperly failed to include in his hypothetical question to the VE, the ALJ found that plaintiff had a severe impairment of depression. (Tr. 26). Therefore, he evaluated plaintiff's mental limitations by application of the special psychiatric review technique (PRT) set forth in 20 C.F.R. § 404.1520a (2012).

Using the PRT, the ALJ found that plaintiff had mild restriction in the activities of daily living based on a review of the function report plaintiff completed and a report from consultative psychologist Jon G. Rogers, Ph.D. (Tr. 27, 156-63, 336-40).

The ALJ noted that plaintiff indicated that he takes his children to and from school, cuts grass, does whatever he can to help his wife around the house, takes care of his personal needs, prepares meals such as sandwiches, drives a car, shops in stores but cannot walk long, attends church every Sunday that he is physically able, lifts up to 25 pounds without pain, and walks 1/4 mile before needing rest. (Tr. 33).

Based on plaintiff's report to Dr. Rogers that he lived with his wife and children, but had few friends and no social activities except for church, the ALJ found that plaintiff had moderate difficulties in maintaining social functioning. The ALJ also found that plaintiff had moderate difficulties with regard to concentration,

persistence and pace. (Tr. 27). While plaintiff indicated in his Function Report that he had no problems with concentration, memory, understanding or following instructions, Dr. Rogers found that plaintiff could not perform a serial 7's subtraction task. However, he could spell the word "world" backward and answer three math problems correctly. He also could correctly repeat five digits forward and three digits backward, recall three objects after five minutes, remember his activities from the day before the evaluation, and recall the birthdays of his family members and his age when he left school. (*Id.*).

The ALJ also found that plaintiff has experienced one to two episodes of decompensation, each of extended duration. He was hospitalized for this in November 2007 because he was acting in a delusional manner and was experiencing auditory hallucinations, claiming deceased family members were talking to him. At that time, plaintiff denied being depressed, suicidal, homicidal or having hallucinations. He reported being upset as a result of losing his job. When he was discharged, he exhibited no signs of any behavioral problems. (Tr. 28, 239).

Dr. Nuckols was one of two state agency reviewing psychiatrists who evaluated plaintiff. The other was Dr. Peter Sims. The ALJ considered and gave "significant weight" to the mental RFC assessments of these physicians. (Tr. 35, 332-35, 355-58).

In reaching a functional capacity assessment, including the portion quoted above, Dr. Nuckols rated plaintiff's social interaction as follows. With regard to his ability to ask simple questions or request assistance, he rated him "not significantly limited." He rated his abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, as "moderately limited." In none of these, or any other, categories was he found to be "markedly limited." (Tr. 333).

In these same categories, Dr. Peter Sims also found that plaintiff's ability to ask simple questions or request assistance was "not significantly limited." (Tr. 356). Dr. Sims also agreed that plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors was "moderately limited." However, he concluded that plaintiff's abilities to interact appropriately with the general public, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, were "not significantly limited." (Tr. 356).

In his functional capacity assessment, Dr. Sims found as follows with regard to plaintiff's ability to sustain concentration and persistence:

> The claimant does not have severe limitations of attention, concentration, or task completion that prevent him from sustain[ed] attention on work related tasks or prevent him from completing work related tasks. He appears to be distracted by his physical pain but, despite this impairment, can maintain attention sufficiently to complete simple 1- to 2- step tasks for periods of at least 2 hours, without the need for special supervision or extra rest periods. The claimant may be able to complete more complex tasks if they are broken down into smaller, simpler sections to be completed. The claimant appears able to complete an 8-hour workday, provided all customary breaks from work are provided. The claimant may benefit from a flexible daily schedule. The claimant may benefit from a well-spaced work setting. The claimant can make simple, short-term work-related decisions. He may need help with those decisions that are more complex or long-term. The claimant may miss one or two days of work each month - as a direct result of psychiatric signs and symptoms. Overall, the claimant will be able to maintain work attendance within customary expectations.

(Tr. 357).

The ALJ considered these assessments but is not required to adopt them *in toto*. While statements from physicians regarding the level of work a claimant can perform are important, they are not determinative because the ALJ has the ultimate responsibility to assess a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1513(c), 404.1527, 404.1545, 404.1546(c).

In addition to the reports of the state agency psychiatrists and Dr. Rogers, the ALJ also reviewed the medical records for references to plaintiff's depression and noted that, in March 2009, gastroenterologist Eghierhua Ugeheoke, M.D., reported that plaintiff exhibited no indication of memory loss, confusion, anxiety or tension.

(Tr. 34, 383). The ALJ also noted that, in August 2009, plaintiff reported to medical personnel at Alabama Psychiatric Services that he had been doing somewhat better on medication, that his depression was improving and that his anger was not as before. (Tr. 34, 400).

While plaintiff asserts that certain limitations were not included in the hypothetical question that was asked of the VE, it is important to note that the ALJ need not include limitations that are not supported by the evidence in the record. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (stating the ALJ is not required to consider non-exertional impairments that he found not to be credible). Although not specifically stated on the record, the failure of the ALJ to include these limitations in his hypothetical questions leads to the conclusion that he either did not find them credible or they were implicitly included. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011) (hypothetical question must include all of claimant's limitations or "otherwise implicitly account" for them).

The "limitations" which plaintiff says should have been included in the hypothetical question were speculative at best. The limitations which plaintiff states should have been included are those where Dr. Nuckols opined: Claimant *would likely* have trouble with more detailed tasks and instructions, *would be expected* to maintain attention and concentration for 2 hours without customary rest breaks, a

well-spaced work environment *would be best* for maximum concentration, he *would likely* miss 1-2 days/month due to psych symptoms, his contact with the public *should be* infrequent and non-intensive and supervision *should be* tactful, constructive and non-threatening.

It is important to note that the hypothetical questions "need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (internal quotation marks and citation omitted). The ALJ credited testimony that reflected plaintiff could do simple one- or two-step tasks and would require a low-stress work environment, and that a functional limitation to resolve the stress would be only occasional contact with the public.

Dr. Sims opined that by being able to perform simple one- or two-step tasks for two hours before he received a break, claimant appeared able to complete an eight-hour workday, provided all customary breaks from work were provided. He further opined that, while plaintiff may miss one or two days of work each month as a direct result of psychiatric signs and symptoms, overall he was able to maintain work attendance within customary expectations. Thus, it was not necessary for the ALJ to include language about the plaintiff's limitation of concentration to two hours

between breaks when this would be customary, especially in a low-stress job environment.

Furthermore, the ALJ's hypothetical question included a limitation that the plaintiff's work would be limited to simple one- or two- step tasks, which clearly implies that he would have trouble with detailed tasks and instructions. The hypothetical question also assumed that plaintiff's work environment was to be low-stress. This clearly implies that supervision would be non-threatening. This is sufficient.

In this case, the ALJ, in his hypothetical question to the VE, included or implicitly accounted for all of plaintiff's limitations; he did not err by not explicitly including the limitations which plaintiff asserts should have been included. Therefore, the VE's testimony constituted substantial evidence. Because substantial evidence shows that the ALJ sufficiently accounted for Mr. Jones's limitations, the decision of the Commissioner is due to be AFFIRMED. A separate order will be entered.

DONE this 4th day of December, 2013.

_Harwell G. Davis_  
HARWELL G. DAVIS, III  
UNITED STATES MAGISTRATE JUDGE